## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MARK AMENT,

              Plaintiff,                              CASE NO.:

v.                                               JURY TRIAL DEMANDED

THE SWATCH GROUP (U.S.) INC.,

              Defendant.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MARK AMENT (hereinafter referred to as "Plaintiff" or "Mr. Ament"), by and through his undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant, THE SWATCH GROUP (U.S.) INC. (hereinafter referred to as "Defendant" and/or "SWATCH"), and alleges as follows:

### INTRODUCTION

1.      This case involves a disabled man who was discriminated against, retaliated against, and unlawfully terminated by his employer on the basis of his disability, for requesting a reasonable accommodation, and for taking medical leave.

2.      Plaintiff seeks monetary relief to redress Defendant's unlawful employment practices in violation of the Family Medical Leave Act, 29 U.S.C. § 2612 *et seq.* ("FMLA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Florida Civil Rights Act of 1992, § 760.01, *et seq.*, Florida Statutes ("FCRA"), and the Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A, *et seq.* ("MDHRO"), and Defendant's deprivation of Plaintiff's civil right to pursue equal employment opportunities.

1

## PARTIES

3.      Plaintiff is an individual male residing in Miami-Dade County, Florida.

4.      THE SWATCH GROUP (U.S.) INC. ("Defendant SWATCH" and/or "Defendant") is a Foreign Profit Corporation registered in Delaware with its principal place of business located at 1200 Harbor Boulevard, Weehawken, NJ, 07086..

5.      At all times material, Defendant employed Plaintiff at 703 Waterford Way, Suite 920, Miami, FL, 33126 (hereinafter referred to as the "Miami location").

6.      The exact number of employees of Defendant is unknown, but upon information and belief, there are well more than the statutory minimum under the FMLA, ADA, FCRA and the MDHRO.

7.      At all times material, Defendant was an "employer" within the meaning of 29 U.S.C. § 2611(4)(a), 42 U.S.C. § 12111(5)(A), § 760.02(7), Florida Statutes and § 11A-25 of the MDHRO.

8.      At all times material, Plaintiff was an "eligible employee" of Defendant within the meaning of 29 U.S.C. § 2611(2).

9.      At all times material, Plaintiff was a "qualified individual" within the meaning of 42 U.S.C. § 12111(8).

10.     At all times material, Defendant was a "person" within the meaning of § 760.02(6), Florida Statutes.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to 29 U.S.C. § 2612 and 42 U.S.C. § 12101.

12.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida. The Defendant was and is still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PREREQUISITES

13.     Mr. Ament has complied with all administrative requirements.

14.     On or about April 4, 2024, Mr. Ament timely filed a Charge of Discrimination (Charge No. 510-2024-05987) against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

15.     In or around November 11, 2024, the EEOC issued Plaintiff's Notice of Right to Sue against Defendant.

16.     In or around January 20, 2024, the MDCHR issued Plaintiff's Notice of Right to Sue against Defendant.

17.     Mr. Ament is timely filing this action within ninety (90) days of receipt of each Notice of Right to Sue.

18.     Mr. Ament is timely commencing this action more than 180 days following the filing of his charge of discrimination.

## FACTUAL ALLEGATIONS

19.     At all times material, Mr. Ament is a disabled man and is therefore a protected class member.

20.     During Mr. Ament's employment, Defendant SWATCH, by and through its management, human resources, and employees, subjected Mr. Ament to discriminatory conduct, including but not limited to the following: 1) repeatedly denying Mr. Ament a reasonable accommodation, 2) reducing Mr. Ament's hours, 3) reducing Mr. Ament's wages, 4) eliminating Mr. Ament's position while he was on medical leave, and 5) unlawfully terminating Mr. Ament's employment, among others.

21.     At all times material, Mr. Ament was a satisfactory employee.

22.     In or around March of 2022, Defendant SWATCH hired Mr. Ament as a Sales Support Specialist.

23.     As a Sales Support Specialist, Mr. Ament telephonically assisted in troubleshooting client issues, closing sales, and addressing third party payment disputes.

24.     In or around July 10, 2023, Defendant promoted Mr. Ament to the Omega Sales Operations Specialist.

25.     In or around August of 2023, Mr. Ament began to feel weak, unlike his usual self. While walking in the office, Mr. Ament tripped on a carpet and fell, sustaining significant injuries. Mr. Ament's fall resulted in six (6) stitches. Mr. Ament further noticed a difficulty in swallowing, breathing, standing, walking, motor skills in his legs, and driving, among others.

26.     Mr. Ament continued to work while his motor functions and energy levels were diminishing.

27.     As these symptoms worsened, Mr. Ament decided to visit a rheumatologist, neurologist, and a muscle specialist.

28.     After thorough testing, Mr. Ament was diagnosed with dermatomyositis, a rare, chronic autoimmune disease.

29.     Dermatomyositis attacks the human muscles in various areas of the body, resulting in muscle weakness and deterioration. Dermatomyositis is not curable, however extensive therapy and in some circumstances, surgery, may result in increased muscle strength and function.

30.     Mr. Ament's dermatomyositis targeted the muscles in his legs, abdomen/core, esophagus, and resulted in incontinence. This disease resulted in Mr. Ament not being able to use his legs in any capacity or swallow solids or liquids.

31.     Mr. Ament could not stand, walk, drive, or concentrate. Mr. Ament also could not eat or drink. As a result, Mr. Ament's energy levels were minimal. Mr. Ament further had difficulty sleeping as the pain he experienced was immense and overwhelming.

32.     As a precautionary measure, Mr. Ament checked into Jackson Memorial Hospital for several weeks. During this time, Mr. Ament's ability to swallow worsened, resulting in the doctors placing a feeding tube in his stomach to survive.

33.     Mr. Ament notified Defendant of his diagnosis and requested medical leave. Defendant granted this initial request for leave medical leave.

34.     Mr. Ament spent the next few weeks being treated with medication while building strength in his muscles. As Mr. Ament regained strength, he began relearning how to stand, walk, swallow, bathe, dress, eat, etc.

35.     After being discharged from the hospital, Mr. Ament began attending a rehabilitation facility for multiple hours each day for several weeks.

36.     Mr. Ament started seeing a speech therapist, physical therapist, and occupational therapist with the hopes of restoring his health and being able to live a normal life once again.

37.     At all times material, Defendant SWATCH employed Ralph Alamo (hereinafter "Mr. Alamo") as a Human Resources Manager.

38.     At all times material, Mr. Alamo had direct supervisory authority over Mr. Ament, including but not limited to the ability to change Mr. Ament's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Mr. Ament.

39.     In or around November 28, 2023, Mr. Ament notified Mr. Alamo that he was still using a feeding tube, was physically weak, and continued undergoing intravenous immunoglobulin treatment. Mr. Ament further explained that "I don't believe any of these conditions would hinder my ability to work, but they may require certain accommodations."

40.     Mr. Alamo responded, "[o]nce you have more concrete information we can open the door to possible accommodations…"

41.     Mr. Ament was relieved that Defendant was providing him with the necessary time to recover.

42.     At all times material, Defendant SWATCH employed Don Bernard (hereinafter "Mr. Bernard") as a Sales Operation Manager.

43.     At all times material, Mr. Bernard had direct supervisory authority over Mr. Ament, including but not limited to the ability to change Mr. Ament's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Mr. Ament.

44.     At all times material, Defendant SWATCH employed Michelle Mendez (hereinafter "Ms. Mendez") as a Human Resources Generalist.

45.     At all times material, Ms. Mendez had direct supervisory authority over Mr. Ament, including but not limited to the ability to change Mr. Ament's hours, work assignments, work schedule, and work location, as well as the ability to hire and/or fire Mr. Ament.

46.     In or around December 5, 2023, Mr. Ament contacted Mr. Alamo, Mr. Bernard, and Ms. Mendez, explaining that his doctor cleared him to start working again with an accommodation.

47.     In or around December 14, 2023, Mr. Ament again contacted Mr. Alamo, Mr. Bernard, and Ms. Mendez. Mr. Ament explained that he had not heard back from any of them, but he would provide any necessary medical documentation to obtain a reasonable accommodation and continue working.

48.     Defendant did not answer Mr. Ament until January 4, 2024, when Mr. Alamo responded by asking Mr. Ament for a detailed doctor's note including the requested accommodation.

49.     Several hours later, Mr. Ament provided Defendant with a doctor's note.

50.     Mr. Alamo stated that the doctor's note was deficient, and he requested an additional note. Although Mr. Alamo's requests were vague and his complaints about the doctor's notes provided were unclear, Mr. Ament provided a more-detailed doctor's note.

51.     In or around January 16, 2024, Mr. Ament further inquired to Mr. Alamo, Mr. Bernard, and Ms. Mendez about his return to full-time work.

52.     In or around January 18, 2024, Mr. Ament, Mr. Alamo, and Mr. Bernard discussed Mr. Ament's return to work. Mr. Ament sent meeting notes to memorialize the call, which stated that Defendant was not opposed to Mr. Ament returning to work. However, Defendant proposed to reduce Mr. Ament's hours and pay while clearly expressing a disinterest in accommodating Mr. Ament.

53.     Interestingly, Mr. Alamo and Ms. Mendez informed Mr. Ament that he would not qualify for paid-time-off, despite Defendant's company policy stating that paid-time-off is

advanced at the start of each year. To be clear, Ms. Mendez explicitly told Mr. Ament that Defendant would violate its own policies by not giving him any paid-time-off.

54.     Mr. Ament rearticulated his disability and required accommodation, writing, "I added that, due to my disease being muscular, it also affects my swallowing and that most of my feeding is done through a tube in my stomach. I explained that it would be more comfortable to do this from home, but I am happy to go back to the office and do it from there if the accommodations are not possible."

55.     Mr. Ament explained that his accommodation request, in part, was a work-from-home accommodation.

56.     Mr. Ament provided multiple doctor's notes to Defendant and indicated that he could perform the essential functions of his position.

57.     Again, or around January 29, 2024, Mr. Alamo requested additional medical documentation to evaluate Mr. Ament's accommodation request.

58.     In or around February 8, 2024, Mr. Ament provided yet another doctor's note stating Mr. Ament's physical impairments. Mr. Ament explicitly stated that the dermatomyositis impacted his ability to walk, stand, drive, and eat, but that he was able to perform the job with a work-from-home accommodation.

59.     In or around February 14, 2024, Mr. Alamo informed Mr. Ament that Defendant eliminated Mr. Ament's position.

60.     Mr. Ament was shocked because Defendant had not previously hinted at eliminating his position.

61.     Several hours later, Mr. Alamo sent Mr. Ament a Severance Agreement stating "[t]his letter confirms our discussion that your employment with The Swatch Group (U.S.) will terminate effective March 1, 2024 (the "Separation Date").

62.     In or around March 1, 2024, Defendant SWATCH terminated Mr. Ament.

63.     Defendant's actions devastated Mr. Ament. Mr. Ament's entire life was turned upside-down following his diagnosis, and he spent months with doctors and therapists to become healthy enough to return to work and provide for himself.

64.     Mr. Ament battled against all odds to regain his health, and when he was medically cleared to return to work with a reasonable accommodation, Defendant denied each accommodation request, reduced Mr. Ament's hours, reduced Mr. Ament's wages, eliminated the Sales Operation Specialist position, and terminated Mr. Ament without giving him an accommodation or a chance to return to work.

65.     Defendant SWATCH unlawfully and wrongfully terminated Mr. Ament because of his disability and in retaliation for requesting a reasonable accommodation and taking medical leave.

66.     Mr. Ament specifically complained to Defendant's Human Resources and Managers about the unlawful discriminatory and retaliatory activity.

67.     The events described above are just a few examples of unlawful discrimination and retaliation that Defendant SWATCH subjected Mr. Ament to on a continuous and ongoing basis throughout his employment.

68.     Defendant SWATCH unlawfully discriminated against Mr. Ament because of his disability.

69.     Defendant SWATCH failed to reasonably accommodate Mr. Ament's disability-related accommodation requests as required by law.

70.     Defendant SWATCH retaliated against Mr. Ament for requesting disability-related accommodation.

71.     Defendant SWATCH retaliated against Mr. Ament for taking medical leave.

72.     Defendant SWATCH retaliated against Mr. Ament for opposing Defendant's unlawful and discriminatory conduct.

73.     Defendant SWATCH retaliated against Mr. Ament for requesting and taking medical leave that he was entitled to.

74.     Thus, Defendant SWATCH violated the FMLA, ADA, FCRA and MDHRO by failing to accommodate Mr. Ament and by subjecting Mr. Ament to disparate treatment, retaliation, and wrongful termination.

75.     Defendant's discrimination, retaliation, and unlawful termination against Mr. Ament is in violation of the FMLA, ADA, FCRA and the MDHRO.

76.     Mr. Ament claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

77.     At all relevant times, Defendant's employees were acting as agents of Defendant in their discriminatory, retaliatory, and unlawful treatment of Mr. Ament.

78.     At all relevant times, Defendant acted with deliberate indifference to the discriminatory treatment and retaliation complained of herein.

79.     As a result of Defendant's actions, Mr. Ament felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

80.     As a result of the acts and conduct complained herein, Mr. Ament has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Mr. Ament has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Mr. Ament has further experienced severe emotional and physical distress.

81.     Defendant's physical and mental wellbeing has suffered tremendously because of Defendant's conduct.

82.     Defendant's conduct has exacerbated Mr. Ament's physical symptoms.

83.     Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendant.

84.     Defendant is either directly or vicariously responsible for the unlawful facts and conduct complained of herein.

### CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 2615
### *FMLA Interference*

85.     Plaintiff reincorporates the factual allegations in paragraphs 19 through 84.

86.     Employers are prohibited from interfering with, restraining, or denying the exercise or attempted exercise of any right protected by the FMLA. 29 U.S.C. § 2615.

87.     By nature of Plaintiff's employment with Defendant, Plaintiff was an eligible employee and was entitled to leave benefits under the FMLA.

88.     In or around August of 2023, Defendant was on notice of Plaintiff's entitlement to FMLA leave.

89.     Plaintiff suffered from a serious health condition as defined in 29 U.S.C. § 2611(11).

90.     Plaintiff was diagnosed with dermatomyositis, a rare chronic autoimmune disease that causes muscle weakness.

91.     Plaintiff's case of dermatomyositis targeted the muscles in his legs, abdomen/core, esophagus, and resulted in incontinence. This disease rendered Mr. Ament unable to use his legs in any capacity or swallow solids or liquids. For months, Mr. Ament could not stand, walk, drive, or concentrate, or eat or drink without a feeding tube that was placed in his stomach. Mr. Ament underwent extensive therapies for months to rehabilitate his body.

92.     Defendant violated the FMLA by unlawfully interfering, restraining, and denying Plaintiff's use and/or attempted use of his leave benefits under the FMLA. Specifically, Defendant eliminated Plaintiff's position and terminated Plaintiff while he was on approved FMLA leave.

93.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

94.     The conduct of the Defendant deprived Plaintiff of his statutory rights guaranteed under the FMLA.

95.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT II
**29 U.S.C. §2615**
*FMLA Retaliation*

96.     Plaintiff reincorporates the factual allegations in paragraphs 19 through 84.

97.     Employers are prohibited from retaliating against an employee in any manner for having exercised or attempted to exercise protected rights under the FMLA or using the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c).

98.     Employers are prohibited from retaliating against an employee in any manner for opposing or complaining about any unlawful practice under the FMLA. 29 C.F.R. § 825.220(a)(2).

99.     By nature of Plaintiff's employment with Defendant, Plaintiff was an eligible employee and was entitled to leave benefits under the FMLA.

100.    In or around August of 2023, Defendant was on notice of Plaintiff's entitlement to FMLA leave.

101.    Plaintiff suffered from a serious health condition as defined in 29 U.S.C. § 2611(11).

102.    Plaintiff was diagnosed with dermatomyositis, a rare chronic autoimmune disease that causes muscle weakness.

103.    Plaintiff's case of dermatomyositis targeted the muscles in his legs, abdomen/core, esophagus, and resulted in incontinence. This disease rendered Mr. Ament unable to use his legs in any capacity or swallow solids or liquids. For months, Mr. Ament could not stand, walk, drive, or concentrate, or eat or drink without a feeding tube that was placed in his stomach. Mr. Ament underwent extensive therapies for months to rehabilitate his body.

104.     Plaintiff engaged in a protected activity when he exercised and/or attempted to exercise his right to leave benefits under the FMLA and when he opposed the Defendant's unlawful conduct in violation of the FMLA.

105.     Plaintiff acted in good faith and with the objective and subjective belief that he was entitled to leave benefits under the FMLA and that Defendant had committed violations of the FMLA.

106.     Defendant retaliated against Mr. Ament by engaging in conduct, including but not limited to, repeatedly denying Mr. Ament a reasonable accommodation, reducing Mr. Ament's hours, reducing Mr. Ament's wages, eliminating Mr. Ament's position while he was on medical leave, and unlawfully terminating Mr. Ament's employment.

107.     Defendant took the above-mentioned materially adverse actions, among others, against Plaintiff because of his protected activities.

108.     Any reasonable employee in Plaintiff's position would be dissuaded from opposing unlawful conduct if they knew they would be subjected to the same kind of treatment that Plaintiff was subjected to.

109.     Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of the Defendant's conduct.

110.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost

economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

111.    The conduct of the Defendant deprived Plaintiff of his statutory rights guaranteed under the FMLA.

112.    Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT III**
**42 U.S.C. § 12112**
***ADA Discrimination***

113.    Plaintiff reincorporates the factual allegations in Paragraphs 19 through 84.

114.    The ADA requires that an employer make reasonable accommodations to the known limitations of a qualified individual with a disability and to engage in an interactive process to arrive at the accommodation. 42 U.S.C. § 12112(b)(5).

115.    At all relevant times, Plaintiff was an individual with a disability within the meaning of the 42 U.S.C. § 12102(1) as he was diagnosed with dermatomyositis which substantially limited one or more major life activities such as standing, walking, driving, concentrating, eating, drinking, and sleeping, among others.

116.    Plaintiff had impairments that would substantially limit one or more major life activities and bodily functions, had a record of the impairment, and was regarded by the Defendant as having such impairments.

117.    Plaintiff had known physical impairments and limitations related to his dermatomyositis, including but not limited to the need for a feeding tube to consume food or water, limitations on his ability to walk, stand, and sit, and the need for frequent and nearby restroom access, among others.

118.     Plaintiff was a "qualified individual" within the meaning of 42 U.S.C. § 12111(8), as he could perform the essential functions of his job with or without reasonable accommodations.

119.     Plaintiff requested accommodations for his disability from Defendant including but not limited to the right to work from home and/or a schedule modification.

120.     Defendant failed to reasonably accommodate Plaintiff's disability and failed to engage in an interactive process regarding his accommodation requests.

121.     Defendant discriminated against Plaintiff by engaging in conduct, including but not limited to, failing to accommodate Plaintiff's medical condition, denying Plaintiff the terms and conditions of employment afforded to other non-disabled employees, denying Plaintiff the benefits owed to him, reducing Mr. Ament's hours, reducing Mr. Ament's wages, eliminating Mr. Ament's position while he was on medical leave, and unlawfully terminating Mr. Ament's employment.

122.     Defendant discriminated against Plaintiff in violation of the ADA and interfered with Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of his employment.

123.     The discriminatory actions of the Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for the purposes of the ADA. In subjecting Plaintiff to adverse employment actions, the Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

124.     As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the ADA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back

pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

125.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages, in addition to compensatory damages.

126.    The conduct of the Defendant deprived Plaintiff of his statutory rights guaranteed under the ADA.

127.    Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**42 U.S.C. § 12203**
***ADA Retaliation***

128.    Plaintiff reincorporates the factual allegations in Paragraphs 19 through 84.

129.    The ADA prohibits retaliation against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 12203(a).

130.    At all relevant times, Plaintiff was an individual with a disability within the meaning of the 42 U.S.C. § 12102(1) as he suffered from dermatomyositis which substantially limited one or more major life activities such as standing, walking, driving, concentrating, eating, drinking, and sleeping, among others.

131.    Plaintiff had impairments that would substantially limit one or more major life activities and bodily functions, had a record of the impairment, and was regarded by the Defendant as having such impairments.

132.    Plaintiff had known physical impairments and limitations related to his dermatomyositis, including but not limited to the need for a feeding tube to consume food or water, limitations on his ability to walk, stand, and sit, and the need for frequent and nearby restroom access, among others.

133.    Plaintiff engaged in a protected activity under the ADA when he informed Defendant of known limitations due to his disability, requested reasonable accommodations from Defendant on account of his known limitations, and when he opposed Defendant's unlawful conduct in violation of the ADA.

134.    In response to Plaintiff asserting his protected rights under the ADA, the Defendant retaliated against Plaintiff.

135.    Defendant retaliated against Plaintiff and interfered with Plaintiff's rights by engaging in conduct, including but not limited to, failing to accommodate Plaintiff's medical condition, denying Plaintiff the terms and conditions of employment afforded to other non-disabled employees, denying Plaintiff the benefits owed to him, reducing Mr. Ament's hours, reducing Mr. Ament's wages, eliminating Mr. Ament's position while he was on medical leave, and unlawfully terminating Mr. Ament's employment.

136.    Defendant took the above-mentioned materially adverse actions, among others, against Plaintiff because of his protected activities.

137.    Any reasonable employee in Plaintiff's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff was forced to endure.

138.    Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

139.     As a direct and proximate result of the Defendant's retaliatory conduct in violation of the ADA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

140.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages in addition to compensatory damages.

141.     The conduct of the Defendant deprived Plaintiff of his statutory rights guaranteed under the ADA.

142.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

<u>**COUNT V**</u>
**§ 760.10(1), Fla. Stat.**
*FCRA Disability Discrimination*

143.     Plaintiff reincorporates the factual allegations in paragraphs 19 through 84.

144.     The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's handicap. § 760.10(1)(a), Fla. Stat.

145.     Plaintiff is disabled and is therefore a protected class member.

146.     In or around August of 2023, Plaintiff was diagnosed with dermatomyositis, a rare, chronic autoimmune disease that impacted Plaintiff's ability to walk, sit, stand, eat, drink, sleep, or concentrate.

147.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

148.    Defendant discriminated against Plaintiff by engaging in conduct, including but not limited to, failing to accommodate Plaintiff's medical condition, denying Plaintiff the terms and conditions of employment afforded to other non-disabled employees, denying Plaintiff the benefits owed to him, reducing Mr. Ament's hours, reducing Mr. Ament's wages, eliminating Mr. Ament's position while he was on medical leave, and unlawfully terminating Mr. Ament's employment.

149.    Defendant targeted Plaintiff because he is disabled. No similarly situated employee outside his protected class endured the discriminatory conduct that Plaintiff was forced to endure.

150.    The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute adverse employment actions for purposes of the FCRA. In subjecting Plaintiff to adverse employment actions, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

151.    As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

152.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

153.     The conduct of Defendant deprived Plaintiff of his statutory rights guaranteed under the FCRA.

154.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

**<u>COUNT VI</u>**
**§ 760.10(7), Fla. Stat.**
*FCRA Retaliation*

155.     Plaintiff reincorporates the factual allegations in paragraphs 19 through 84.

156.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

157.     Plaintiff engaged in a protected activity when he opposed Defendant's unlawful discriminatory conduct on the basis of his disability and complained about the unlawful discrimination he was experiencing.

158.     In response to Plaintiff opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Plaintiff.

159.     Defendant retaliated against Plaintiff and interfered with Plaintiff's rights by engaging in conduct, including but not limited to, failing to accommodate Plaintiff's medical condition, denying Plaintiff the terms and conditions of employment afforded to other non-disabled employees, denying Plaintiff the benefits owed to him, reducing Mr. Ament's hours, reducing Mr. Ament's wages, eliminating Mr. Ament's position while he was on medical leave, and unlawfully terminating Mr. Ament's employment.

160.    Defendant took the above-mentioned materially adverse actions, among others, against Plaintiff because of his protected activities.

161.    Any reasonable employee in Mr. Ament's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Mr. Ament was forced to endure.

162.    Defendant's alleged bases for its adverse employment actions against Mr. Ament are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

163.    In fact, within several weeks of Mr. Ament bringing forth a complaint of unlawful discrimination to Defendant's managers and HR, SWATCH terminated Mr. Ament.

164.    As a direct and proximate result of Defendant's retaliatory conduct in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

165.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

166.    The conduct of Defendant deprived Plaintiff of his statutory rights guaranteed under the FCRA.

167.    Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

<u>COUNT VII</u>
**§ 11A-26(1), Code of Miami-Dade County**
***MDHRO Disability Discrimination***

168.     Plaintiff reincorporates the factual allegations in paragraphs 19 through 84.

169.     The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's disability. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).

170.     The MDHRO further prohibits discrimination with respect to an employer refusing or failing to make a reasonable accommodation for a disabled individual. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1)(d).

171.     Plaintiff is disabled and is therefore a protected class member.

172.     In or around August of 2023, Plaintiff was diagnosed with dermatomyositis, a rare, chronic autoimmune disease that impacted Plaintiff's ability to walk, sit, stand, eat, drink, sleep, or concentrate.

173.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

174.     Defendant discriminated against Plaintiff by engaging in conduct, including but not limited to, failing to accommodate Plaintiff's medical condition, denying Plaintiff the terms and conditions of employment afforded to other non-disabled employees, denying Plaintiff the benefits owed to him, reducing Plaintiff's hours, reducing Plaintiff's wages, eliminating Plaintiff's position while he was on medical leave, and unlawfully terminating Mr. Ament's employment.

175.     Defendant targeted Plaintiff because he is disabled. No similarly situated employee outside his protected class endured the discriminatory conduct that Plaintiff was forced to endure.

176.     The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute adverse employment actions for purposes of the MDHRO.  In Plaintiff to adverse employment actions, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

177.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the MDHRO, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff  has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

178.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

179.     The conduct of Defendant deprived Plaintiff of his statutory rights guaranteed under the MDHRO.

180.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.


[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

## COUNT VIII
### § 11A-43(1), Code of Miami-Dade County
### *MDHRO Retaliation*

181.    Plaintiff reincorporates the factual allegations in paragraphs 19 through 84.

182.    The MDHRO prohibits retaliation in any manner against a person who has opposed an unlawful practice, has filed a complaint, or participated in any investigation, proceeding or hearing related to an unlawful practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–43(1).

183.    Plaintiff engaged in a protected activity when he opposed Defendant's unlawful discriminatory conduct on the basis of his disability and complained about the unlawful discrimination he was experiencing.

184.    In response to Plaintiff opposing the discriminatory conduct and asserting his right to enjoy the same employment benefits as every other employee, Defendant retaliated against Plaintiff.

185.    Defendant retaliated against Plaintiff and interfered with Plaintiff's rights by engaging in conduct, including but not limited to, failing to accommodate Plaintiff's medical condition, denying Plaintiff the terms and conditions of employment afforded to other non-disabled employees, denying Plaintiff the benefits owed to him, reducing Plaintiff's hours, reducing Plaintiff's wages, eliminating Plaintiff's position while he was on medical leave, and unlawfully terminating Plaintiff's employment.

186.    Defendant took the above-mentioned materially adverse actions, among others, against Plaintiff because of his protected activities.

187.    Any reasonable employee in Plaintiff's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff was forced to endure.

188.    Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

189.    In fact, within several weeks of Plaintiff bringing forth a complaint of unlawful discrimination to Defendant's managers and HR, SWATCH terminated Mr. Ament.

190.    As a direct and proximate result of Defendant's retaliatory conduct in violation of the MDHRO, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

191.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

192.    The conduct of Defendant deprived Plaintiff of his statutory rights guaranteed under the MDHRO.

193.    Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of the FMLA, ADA, FCRA and MDHRO.

Dated:  Miami, Florida
          January 22, 2025

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*


/s/ Daniel J. Barroukh
Daniel J. Barroukh, Esq.
Florida Bar No.: 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Danielb@dereksmithlaw.com